## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**VILLAGE GRILL CONEY ISLAND, INC.** a Michigan Corporation, **DJELA** and **LESH SHKRELI**, Individually and **MUKADEZ KADIU**, an Individual,

Case No: 2:22-cv-12355

       Plaintiffs,

v

**PRIME ONE INSURANCE GROUP**, a Utah Corporation,

       Defendant.

_____/

| | |
|---|---|
| KEITH C. JABLONSKI (P62111) | KURT D. MEYER (P38205) |
| MASSIMO F. BADALAMENTI (P83847) | **GREGORY, MEYER & CHAPNICK, P.C.** |
| **O'REILLY RANCILIO P.C.** | Attorneys for Defendant |
| Attorneys for Plaintiffs | 340 E. Big Beaver Road, Ste. 520 |
| 12900 Hall Road, Suite 350 | Troy, MI 48083 |
| Sterling Heights, MI 48313 | (248) 689-3920/(248) 689-4560 – Fax |
| (586) 726-1000 /Fax: (586) 726-1560 | kmeyer@gregorylaw.com |
| kjablonski@orlaw.com | |
| mbadalamenti@orlaw.com | |

_____/

## NOTICE OF REMOVAL

    **NOW COMES** Defendant, PrimeOne Insurance Company, erroneously identified as Prime One Insurance Group ("PrimeOne"), and pursuant to 28 U.S.C.A §§ 1441, 1446 and E.D. Mich. LR 81.1, hereby files this Notice of Removal of a

cause of action filed in the 3rd Judicial Circuit Court (Wayne County Circuit Court) of the State of Michigan entitled, *Village Grill Coney Island Inc., a Michigan Corporation, Djela and Lesh Shkreli, Individually and Mukadez Kadiu, an Individual v. PrimeOne Insurance Group*, Case No. 2022-009121-CK, and states:

1.     This action was commenced in the 3rd Circuit Court, Wayne County, Michigan on August 1, 2022, and Defendant first received the initial pleading setting forth the claim for relief upon which the action is based on September 6, 2022.

2.     The action is a civil action stated in five counts entitled: Breach of Contract as to Plaintiff Kadiu, Breach of Contract Implied In Fact and Law as to Plaintiffs Shkreli, Third Party Beneficiary as to Plaintiffs Shklreli, Unjust Enrichment, and Declaratory Judgement and pursuant to 28 U.S.C. §1441, 28 U.S.C.A §1332(a)(1) and Rule 81 of the Federal Rules of Civil Procedure, this Court has original jurisdiction over the matter.

3.     There exists complete diversity of citizenship of the parties. Plaintiff, Village Grill Coney Island Inc., is a Michigan Corporation, with its principal place of business in Wayne County, Michigan (Complaint ¶1). Plaintiffs Shklrelis are residents of Genesee County, Michigan (Complaint ¶2) while Plaintiff Kadiu is a resident of Wayne County, Michigan (Complaint ¶3). Defendant PrimeOne Insurance Company is incorporated in the State of Utah with its principal place of business in Salt Lake City, Utah.

2

4.    The amount in controversy is in excess of $75,000.00 (Complaint ¶19).

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because this is a civil action in which the amounts in controversy exceeds the sum of $75,000.00, exclusive of costs and interests; Plaintiffs are all citizens of the State of Michigan and maintain their principle place of business or reside within Michigan, while Defendant is incorporated and has its principle place of business in Salt Lake City, Utah.

6.    No previous application has been made for the relief requested herein.

7.    A copy of all process, pleadings, and orders served upon Defendant as well as a Proof of Service of written notice of this Notice of Removal to all adverse parties and a copy of same being filed with the clerk of the State court is being filed with this notice as required by 28 USC §1446(a) and (d).

8.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for the Plaintiffs, and a copy is also being filed with the Clerk of the Circuit Court for the County of Wayne, State of Michigan.

9.    Defendant has not filed a response to Plaintiffs' Complaint in state court and will file its response in accordance with FRCP 81 (2) (c).

**WHEREFORE**, Defendant respectfully requests that this action be removed from the State of Michigan, Circuit Court for the County of Wayne, to the United States District Court for the Eastern District of Michigan, and that this Court assume

jurisdiction of this action and make such further orders as may be required to properly determine this controversy.

Respectfully submitted,

By: /s/ Kurt D. Meyer
     KURT D. MEYER
     **GREGORY, MEYER &**
     **CHAPNICK, P.C.**
     Attorneys for Defendant
     340 E. Big Beaver Road, Ste. 520
     Troy, MI 48083
     (248) 689-3920/(248) 689-4560 -Fax
     kmeyer@gregorylaw.com
Dated:  October 4, 2022     P38205

## **CERTIFICATE OF SERVICE**

I hereby certify that on  October 4, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system and I hereby certify that I have emailed and mailed by United States Postal Service the paper to the following non-ECF participants:

KEITH C. JABLONSKI     Wayne County Circuit Court – by
MASSIMO F. BADALAMENTI     Efiling through the Court's
**O'REILLY RANCILIO P.C.**     MiFile/TrueFiling system on October
12900 Hall Road, Suite 350     4, 2022
Sterling Heights, MI 48313
kjablonski@orlaw.com
mbadalamenti@orlaw.com

By: /s/ Kurt D. Meyer
    KURT D. MEYER (P38205)
    **GREGORY, MEYER &**
    **CHAPNICK, P.C.**
    Attorneys for Defendant
    340 E. Big Beaver Road, Ste. 520
    Troy, MI 48083
    (248) 689-3920/(248) 689-4560 -Fax
    kmeyer@gregorylaw.com

Approved, SCAO

| | Original - Court<br>1st Copy- Defendant | 2nd Copy - Plaintiff<br>3rd Copy -Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>**THIRD JUDICIAL CIRCUIT**<br>**WAYNE COUNTY** | **SUMMONS** | **CASE NO.**<br>**22-009121-CK**<br>Hon. Kathleen M. McCarthy |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226      Court telephone no.: 313-224-5481

| Plaintiff's name(s), address(es), and telephone no(s)<br>Village Grill Coney Island Inc     et. Al | v | Defendant's name(s), address(es), and telephone no(s).<br>Prime One Insurance Group |
|---|---|---|

Plaintiff's attorney, bar no., address, and telephone no

Keith C. Jablonski 62111
12900 Hall Rd Ste 350
Sterling Heights, MI 48313-1174

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.     | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>8/1/2022 | Expiration date*<br>10/31/2022 | Court clerk<br>John Flanagan |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)      **SUMMONS**         MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

STATE OF MICHIGAN
IN THE WAYNE COUNTY CIRCUIT COURT

VILLAGE GRILL CONEY ISLAND INC. a
Michigan Corporation, DJELA and LESH SHKRELI,
Individually and MUKADEZ KADIU, an Individual

      Plaintiffs,

v

PRIME ONE INSURANCE GROUP, a Utah
Corporation

      Defendant.
_____/

Case No. 22- 009121    -CK

O'REILLY RANCILIO P.C.
Keith C. Jablonski (P62111)
Massimo F. Badalamenti (P83847)
Attorneys for Plaintiff
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
(586) 726-1000 /Fax: (586) 726-1560
kjablonski@orlaw.com
_____/

## **COMPLAINT**

There is no pending or resolved civil action arising out of the same transaction or occurrence as alleged in this Complaint.

_____
Keith C. Jablonski (P62111)

    NOW COME Plaintiffs, Village Grill Coney Island Inc., Djela and Lesh Shkreli and Mukadez Kadiu, by their counsel, O'Reilly Rancilio P.C., and for their Complaint against Prime One Insurance Group, state as follows:

### **PARTIES AND JURISDICTION**

    1.    Plaintiff Village Grill Coney Island Inc., is a Michigan Corporation, with its registered address located in Wayne County, Michigan.

22-009121-CK FILED IN MY OFFICE   Cathy M. Garrett   WAYNE COUNTY CLERK   8/1/2022 4:27 PM   John Flanagan

2.      Plaintiffs Shkreli are individuals residing in Genesee County, Michigan.

3.      Plaintiff Kadiu is an individual residing in Wayne County.

4.      Defendant, Prime One Insurance, is a Utah Corporation, conducting business in Michigan at 33150 Schoolcraft Rd., Suite 209, Livonia, MI 48150.

5.      Jurisdiction is proper in this Court as the amount in controversy exceeds $25,000.00, exclusive of interest, costs, and attorney fees.

6.      Venue is proper in this Court as the Defendant conducts business in Wayne County, Michigan and the events giving rise to the below referenced claims occurred in Wayne County, Michigan.

**GENERAL ALLEGATIONS**

7.      Plaintiff restate and reallege each allegation contained within this Complaint.

8.      Plaintiffs Shkreli and Plaintiff, Mukadez Kadiu, executed a contract entitled Business Property Lease, dated March 18, 2012 ("Contract"). (**Exhibit A**).

9.      The Contract was executed in conjunction with the lease of real property and improvements located at 27545 Plymouth Road, Livonia, MI 48150 ("the Property") and the transfer of possession and control of restaurant equipment located at the Property.

10.     After execution of the Contract, Plaintiff Kadiu opened a restaurant at the Property and operated the business through and assigned to Village Grill.

11.     Pursuant to the Contract, Plaintiff Kadiu agreed to rent the Property from Plaintiffs according to the terms set forth in Section 3, page 1 of the Contract.

12.     Plaintiff Kadiu was further responsible for maintaining the Property in accordance with Section 9 of the Contract.

2

13.     According to Section 3, paragraph B of the Contract, Kadiu was required to purchase liability, fire, and property damage insurance, with Plaintiffs to be listed as additional named insureds on the policy.

14.     Plaintiff Kadiu, through Village Grill as Lessee of the Property, purchased fire loss coverage from Defendant.

15.     The Policy provided coverage up to $350,000 for the building, $270,000 for business personal property, and $120,000 for business earnings.

16.     On or about August 2, 2020, a fire occurred at the Property, which caused loss to both the building and the contents within, prompting a claim with Defendant by Village Grill.

17.     On October 27, 2022, December 18, 2020, and March 11, 2021 Defendant sent a Rejection of Sworn Statement in Proof of Loss.

18.     On November 2, 2020, Defendant sent Ms. Kadiu a check in the amount of $20,000, representing an advance on the Business Personal Property aspect of her claim.

19.     On or about May 24, 2021, Kadiu & Village Grill, through Michigan Fire Claims, Inc., submitted to Defendant a Sworn Statement in Proof of Loss, claiming $669,397.62. Specifically, the losses included $410,808.84 for the building, $179,687.21 for business personal property, and $148,803.75 for business earnings.

20.     On August 9, 2021, Defendant sent a Coverage Determination letter to Plaintiff Kadiu, enclosing checks as follows:

- $11,061.00 made payable to Village Grill Coney Island Inc., Michigan Fire Claims, Inc. and Fabian, Sklar, King & Liss, P.C., representing a proposed settlement of the Earnings (Business Income loss) aspect of Kadiu's claim.

3

- $7,500.00 made payable to Djela Shkreli, Lesh Shkreli, Mukadez Kadiu, Michigan Fire Claims, Inc. and Fabian, Sklar, King & Liss, P.C., representing a proposed settlement, subject to the policy limit, of the Personal Property of Others aspect of Kadiu's claim.

- $37,582.30 made payable to Village Grill Coney Island Inc., Djela Shkreli, Lesh Shkreli, Mukadez Kadiu, Michigan Fire Claims, Inc. and Fabian, Sklar, King & Liss, P.C, for the actual cash value of the Business Personal Property for which Village Grill had a financial interest.

21.     On April 7, 2021, Plaintiffs filed a lawsuit against Plaintiff Kadiu and Village Grill, alleging breach of contract for failing to pay rent on the Property, failing to pay for the personal property sold under the Contract, and failing to apply insurance proceeds in accordance with the Contract.

22.     Plaintiffs' lawsuit against Kadiu and Village Grill was ultimately settled.

23.     Plaintiffs agreed to seek from Defendant building insurance proceeds, business personal property proceeds, and business earnings due under the policy of insurance issued by Defendant.

24.     Pursuant to the Contract between Plaintiffs and Kadiu, and the policy of insurance issued to Kadiu and Village Grill, Plaintiffs have an insurable interest in the Property.

25.     Based upon Plaintiff's insurable interest, Plaintiff's have a right to bring the present lawsuit against Defendant to recover insurance proceeds under the policy of insurance issued to Kadiu and Village Grill, less payment already made to the same.

26.     Defendant has refused to issue sufficient payments to cover the losses from the fire according to the policy of insurance.

4

## COUNT I – BREACH OF CONTRACT AS TO PLAINTIFF KADIU

27.    Plaintiff restate and reallege each allegation contained within this Complaint.

28.    Plaintiff Kadiu entered into a Contract with Plaintiffs Shkreli wherein Shkreli leased the real property located at 27545 Plymouth Road, Livonia, MI 48150 ("the Property") and transfer possession and control of certain restaurant equipment located at the Property to Plaintiff Kadiu.

29.    According to the Contract, Plaintiff Kadiu was required to purchase liability fire and property damage insurance with Plaintiffs as additional named insureds on the policy.

30.    Kadiu did purchase liability fire and property damage insurance from Defendant and the same was in effect on August 2, 2020.

31.    Plaintiff Kadiu paid $3,635.00 in premiums to Defendant.

32.    On August 2, 2020, a fire occurred at the Property, causing substantial damage and loss to the building, business personal property, and business income.

33.    Plaintiff Kadiu made a claim with Defendant for $726,610.62 and provided detailed descriptions of items and income lost.

34.    Defendant paid a total of $48,643.00 to Kadiu and Plaintiffs for business personal property and business income losses, and $7,500.00 to Plaintiffs Shkreli for personal property of others.

35.    Pursuant to the policy of insurance, Plaintiffs Kadiu and Village Grill were covered for the building, business personal property, and business income for up to $740,000.00.

36.    Defendant has breached the Contract for insurance by failing and/or refusing to make payments to Plaintiff Kadiu up to the policy limits.

37.    As a direct and proximate result of Defendant's substantial and material breach of

5

the Contract, Plaintiffs have suffered substantial economic damages and loss in excess of $25,000.00 including, but not limited to, the damages to the Property, the loss of business income, expert fees, attorney fees and other costs.

WHEREFORE, Plaintiff Kadiu requests that this Court enter judgment against Defendant in an amount to be determined in excess of $25,000.00, together with interest, costs, and attorney fees, in addition to such further relief as this Court deems just and appropriate.

## COUNT II - BREACH OF CONTRACT IMPLIED IN FACT AND LAW AS TO PLAINTIFFS SHKRELI

38.     Plaintiffs Shkreli restate and reallege each allegation contained within this Complaint.

39.     A contract implied in fact arises "where the parties do not explicitly manifest their intent to contract by words, their intent may be gathered by implication from their conduct, language, and other circumstances attending the transaction." *Temborius v Slatkin*, 157 Mich App 587; 403 NW2d 821, 826 (1986).

40.     A contract implied in law is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended. A contract may be implied in law where there is a receipt of a benefit by a defendant from a plaintiff and retention of the benefit is inequitable, absent reasonable compensation. *Matter of Est. of Lewis*, 168 Mich App 70; 423 NW2d 600 (1988).

41.     On May 24, 2021, Michigan Fire Claims, Inc. submitted to Defendant, on behalf of Plaintiff Kadiu and Village Grill, a Sworn Statement in Proof of Loss.

42.     The Sworn Statement in Proof of Loss stated, "Loss, if any, payable to Village Grill Coney Inc, DBA Livonia Grill Family Dining, Michigan Fire Claims, Inc, Djela & Lesh Shkreli &Fabian, Sklar, King & Liss, P.C."

6

43.     The Sworn Statement in Proof of Loss gave Defendant notice of Plaintiffs Shkrelis' insurable interest in the Property.

44.     Plaintiffs Shkreli leased the Property to Plaintiffs Kadiu and Village Grill and required, under the contract, that she purchase liability fire and property damage insurance. Plaintiffs Kadiu and Village Grill purchased the requisite insurance and paid her insurance premiums.

45.     Following a fire at the Property, Plaintiff Kadiu made a claim with Defendant for $726,610.62, less than the applicable policy limits.

46.     Defendant made payment to Plaintiff Kadiu and Plaintiff Shkreli in the amount of $56,143.30.

47.     In making payment to Plaintiffs Shkreli, Defendant has demonstrated that while it did not have an express contract with them, it intended for them to benefit from the policy of insurance as the owner of the Property.

48.     Defendant has breached the contract implied in law and fact with Plaintiffs Shkreli by failing and/or refusing to issue payment in the full policy amount to Plaintiffs Shkreli.

49.     Defendant's retention of the premium paid by Plaintiff Kadiu, as required by Plaintiff Kadiu's Contract with Plaintiffs Shkreli, would be unjust and inequitable, absent reasonable compensation under the policy of insurance.

WHEREFORE, Plaintiffs Shkreli request that this Court enter judgment against Defendant in an amount to be determined in excess of $25,000.00, together with interest, costs, and attorney fees, in addition to such further relief as this Court deems just and appropriate.

**COUNT III – THIRD PARTY BENEFICIARY AS TO PLAINTIFFS SHKRELI**

50.     Plaintiff Shkreli restate and reallege each allegation contained within this Complaint.

51.     MCL 600.1405 states, "Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee."

52.     Plaintiffs Shkreli leased the Property to Plaintiff Kadiu and required, under the lease, that she purchase liability, fire and property damage insurance. Plaintiff Kadiu purchased the requisite insurance and paid her insurance premiums.

53.     Following a fire at the Property, Plaintiff Kadiu made a claim with Defendant for $726,610.62, lower than the policy limit.

54.     On May 24, 2021, Michigan Fire Claims, Inc., submitted to Defendant, on behalf of Plaintiff Kadiu and Village Grill, a Sworn Statement in Proof of Loss.

55.     The Sworn Statement in Proof of Loss stated, "Loss, if any, payable to Village Grill Coney Inc, DBA Livonia Grill Family Dining, Michigan Fire Claims, Inc, Djela & Lesh Shkreli &Fabian, Sklar, King & Liss, P.C."

56.     The Sworn Statement in Proof of Loss gave Defendant notice of Plaintiffs Shkrelis' insurable interest in the Property.

57.     Defendant did make payment to Plaintiff Kadiu and Plaintiff Shkreli in the amount of $56,143.30.

58.     As the owner of the property, Plaintiffs Shkreli were direct, third party beneficiaries to Plaintiff Kadiu's policy of insurance with Defendant.

8

59.     As stated in the Sworn Statement in Proof of Loss, and demonstrated through Defendant's payment of $7,500 directly to Plaintiffs Shkreli, Defendant was aware that Plaintiffs Shkreli directly benefited from the policy of insurance.

60.     As a third party beneficiary, Plaintiffs Shkreli are entitled to payment up to the full amount of the policy limits.

61.     Defendant has breached the contract with Plaintiff Kadiu by failing and/or refusing to issue payment in the full policy amount. Said failure and/or refusal has directly damaged Plaintiffs Shkreli.

WHEREFORE, Plaintiffs Shkreli request that this Court enter judgment against Defendant in an amount to be determined in excess of $25,000.00, together with interest, costs, and attorney fees, in addition to such further relief as this Court deems just and appropriate.

### COUNT IV – UNJUST ENRICHMENT

62.     Plaintiffs restate and reallege each allegation contained within this Complaint.

63.     Pursuant to Plaintiff Kadiu's Contract with Plaintiffs Shkreli, Kadiu was required to purchase liability, fire and property damage insurance.

64.     Kadiu purchased liability, fire and property damage insurance from Defendant and paid a premium of $3,635.00.

65.     Defendant received said premium and failed and/or refused to issue payment for fire loss according to the policy of insurance.

66.     It would be inequitable to allow the Defendant to retain and use the funds paid by Plaintiff Kadiu.

67.     Plaintiffs have been damaged on account of Defendant's unjust enrichment.

9

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendant in an amount to be determined in excess of $25,000.00, together with interest, costs, and attorney fees, in addition to such further relief as this Court deems just and appropriate.

## COUNT V – DECLARATORY JUDGMENT

68.     Plaintiffs restate and reallege each allegation contained within this Complaint.

69.     Plaintiff Kadiu purchased from Defendant liability fire and property damage insurance from Defendant and paid a premium of $3,635.00.

70.     The policy of insurance provided coverage for building loss, business personal property, and business income totaling $740,000.00.

71.     Plaintiff Kadiu made a claim with Defendant for $726,610.62 following a fire causing damage to the building, personal property of the business, and loss of business income.

72.     Plaintiff Kadiu, through Michigan Fire Claims, Inc, submitted a detailed itemization of the loss that occurred as a result of the fire, which amounted to $726,610.62.

73.     Defendant has paid only $56,143.30 for the loss that occurred at the Property, and Plaintiff's have disputed the sufficiency, of those payments to cover the losses.

74.     Pursuant to MCR 2.605, Plaintiffs Shkreli and Kadiu seek a declaration by this Honorable Court as to the remaining amount of the insurance policy.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant in an amount to be determined in excess of $25,000.00, together with interest, costs, and attorney fees, in addition to such further relief as this Court deems just and appropriate.

O'REILLY RANCILIO P.C.


By: /s/ Keith C. Jablonski
        Keith C. Jablonski (P62111)
        Massimo F. Badalamenti (P83847)
        Attorneys for Plaintiffs
        12900 Hall Road, Suite 350
        Sterling Heights, MI  48313
        (586) 726-1000/Fax: (586) 726-1560
Dated: August 1, 2022      kjablonski@orlaw.com

11

# EXHIBIT A

## BUSINESS PROPERTY LEASE

DJELA SHKRELI AND LESH SHKRELI, residing at 1124 E Main St Flushing, MI 48433, the lesser, and MUKADEZ KADIU, residing at 39224 Phlox Lane Westland, MI 48186, the Lessee, enter into this Lease subject to the following conditions:

1. Premises. The Lessor leases to the Lessee the property located at 27545 Plymouth Road, Livonia, Michigan 48150.

2. Lease Term. The Lease term shall be five (5) years at $2,000.00 per month with the first two months free beginning April 1, 2012. Five years of rent at $2,000.00 per month commencing on June 1st 2012 and ends on May 31, 2017. Five years of rent at $2,200.00 per month beginning June 1, 2017 and ending May 31, 2022. Five years of rent at $2,400.00 beginning June 1, 2022 and ending May 31, 2027. This lease is a TRIPLE NET LEASE.

   All bills, gas, electric, etc belong to the lesser, Djela Shkrelli and Lesh Shkrelli. From the day the rent begins, all bills will belong to the lessee, Mukadez Kadiu.

3. Rent:

   A. Base Rent: The Lessee shall pay the Lessor the sum of Three Hundred ($330,000.00) Dollars as Base Rent for the Term of the Lease.

      Monthly installments of rent in the amount of Two Thousand ($2,000.00) Dollars shall be due and payable in advance on the first day of each calendar month, beginning June 1, 2012 and ending May 31, 2017. June 1, 2017 monthly installments of rent in the amount of two thousand and two-hundred ($2,200.00) shall be due and payable in advance on the first day of each calendar month through May 31, 2022. June 1, 2022 monthly installments of rent in the amount of two thousand and four-hundred ($2,400.00) shall be due and payable in advance on the first day of each calendar month through May 31, 2027. Rent for any partial month of occupancy shall be prorated. Rent shall be paid to the Lessor at the address shown above or any other place designated in writing by the Lessor.

   B. Additional Rent. This is a TRIPLE NET LEASE. The Lessee will pay all utilities, real estate taxes, repairs and any other charges necessary to maintain the building and/or its equipment and parking lot in its current condition throughout the terms of the Lease. Further, Lessee agrees to purchase liability fire and property damage insurance with Lessors, DJELA SHKRELI and LESH SHKRELI listed as additional named insured's on an insurance policy sufficient to cover the complete loss and/or

**Terms of Payment:** Total payment for all assets is $60,000.00. Down payment, which will be made in cash/check, is $25,000.00 which will be made on March 19th, 2012. The difference of $35,000.00 shall begin on June 1st, 2012 with payment for One Thousand ($1,000.00) Dollars per month on the 1st of each month for the following 35 months. On May 1st, 2015, the Lessee shall have an additional thirty (30) days until June 1st, 2015 to pay the remaining difference on the unpaid balance as a balloon payment.

3.1 **Payment of Purchase Price:** The total purchase price shall be paid as follows:

A. Personal Property: Payment for the personal property shall be made beginning June 1st, 2012 and each successive month thereafter until thirty-five (35) monthly payments have been made in the amount of One-thousand ($1,000.00) Dollars for a total payment inclusive of any and all interests of $35,000.00 Dollars. On May 1st, 2015 the Lessee shall have thirty (30) days to pay the remaining difference owed as a balloon payment. After all the assets are paid off for the amount of $35,000.00, all the assets will now belong to MUKADEZ KADIU. Until then, the assets belong to DJELA SHKRELI AND LESH SHKRELI.

3.2 **Security Agreement:** As security for the payment of the Note, Purchasers shall execute a Security Agreement, attached as Schedule 3.2, granting a security interest to Seller in the assets described in this Agreement.

3.3 **Default:** If Purchasers defaults in any obligations (i.e., Note), such default shall constitute a default on any other obligation, regardless of the identity of the other obligation, regardless of the identity of the other Purchaser, and any rights of acceleration shall apply to each obligation.

**Signs.** All signs placed on the Premises shall be subject to the prior written approval of the Lesser.

**Acceptance of Occupancy.** The Lessee shall commence occupancy of the Premises on the commencement date and begin paying rent as required by this Lease. The Lessee acknowledges that the Premises are in a state of repair that is acceptable for the Lessee's intended use of the Premises. The Lessee accepts the Premises as they are.

**Legal Costs.** All legal costs, including attorney fees, shall be paid by Purchaser in case of a default of any of the provisions, by the Purchaser.

**Use.** The Premises are to be used and occupied by the Lessee only for a Coney Island Restaurant. No use activity shall be conducted on the Premises that does not comply with all state and local laws. The Lessee

damage of the building as well as its contents and shall give Lessor thirty (30) days advance notice prior to changing insurance companies and/or policies.

4. **Lease Year**. Lease Year shall mean the period each year commencing June 1st, 2012 and ending May 31st, 2027.

1.1 **Exclusion:**  Except as otherwise provided, this agreement contemplates the purchase and sale, inclusive of assignments, of the purchased assets and specifically excludes Sellers (a) cash, (b) liens and encumbrances, if any on such assets, (c) liabilities, (d) taxes, and (e) assets not specifically or by inference included in the attached Exhibits (the "excluded assets"). Also, except as otherwise provided, Purchaser, is not required but may offer employment to any existing employee of Seller, on such terms as approved by the Purchaser.

2. **Purchase Price:** The purchase price for the assets shall be $35,000.00 allocated as follows:

2.1 **Personal Property:**

   A. All furniture, trade fixtures, equipment, and miscellaneous office and supply items including the items described in Schedule 1.1(A)
   B. Customer list and all files, records and other Tangible assets of or pertaining to the Sellers Business
   C. Good will of the business as a going concern, telephone numbers, listings, and right to use of the Company's name

5. **Option to buy.** The Lesser, MUDADEZ KAHIU, after the three (3) consecutive 5-year terms, will have the option of buying the Premises located on 27545 Plymouth Road, Livonia, Michigan 48150. The lesser will have a chance to make the first offer to purchase the premises. If the lessee will decide to sell the property, the lesser will have the first right to make an offer of the Premises. If the Lessee cannot make the payments, and the Lessee wants to end the rent and return the business to the lesser, this should be agreeable between the Lessee and Lesser. The lesser will allow the lessee to end the rent if the lessee cannot make the payments due to business being bad, or other major reasons. If the lessee has paid off all the assets, and the lessee decides to terminate the lease, the lesser can decide to buy back all the assets paid off if he finds it valuable to buy them back and the assets are in good condition, and both sides decide on terms such as price of assets that are being bought back by the lesser from the lessee.

shall not commence the agreed-upon use until the Lessee shall have obtained all necessary licenses and permits as required by law.

9.   **Maintenance.**  Lessee shall be responsible to maintain the interior and exterior of the Premises, including H.V.A.C. systems, the roof and four outer walls, and the grounds surrounding the Premises.   Lessee shall be responsible for regular exterior maintenance such as lawn care and snow removal.

10.   **Utilities.**   Lessee shall be responsible for all utilities, including water.

11.   **Insurance.**    Lessor shall maintain and keep in full force and effect insurance for fire and special extended coverages, satisfactory to Lessor in its sole discretion.  Lessor shall maintain and keep in full force and effect, during the Lease Term, general liability insurance including blanket contractual coverage in the amount of at lease $1,000,000.00 per occurrence and $1,000,000.00 general aggregate. The cost of the insurance shall be payable by the Lessee within thirty days of Lessors written notice to Lessee.  Lessee shall have the opportunity to review all of the Lessor's policies and records pertaining thereto during regular business hours.  At all times during the Lease Term, Lessee shall carry and maintain, at Lessee's expense, fire and extended coverage insurance covering all leasehold improvements on the Premises and all of Lessee's equipment, trade fixtures, appliances, furniture, furnishings and personal property from time to time in, on or about the Premises. The insurance will be in an amount not less than the full replacement cost.  If Lessee fails to provide any or all of the insurance required by this paragraph Lessor may (but will not be required to) procure or review such insurance and any such amounts paid by the Lessor for such insurance will be additional rent due and payable on or before the next rent payment date.

12.   **Surrender of the Premises.**   The Lessee shall surrender the Premises to the Lessor when this Lease expires, in the same condition as on the commencement date, except for normal wear and tear.

13.   **Entry and Inspection.**   The Lessee shall permit the Lessor or the Lessor's agents to enter the Premises at reasonable times and with reasonable notice, to inspect and repair the Premises.  During the ninety (90) days before the Lease expires, the Lessee shall permit the Lessor to place standard "For Lease" signs on the Premises and permit persons desiring to lease the Premises to inspect the Premises.

14.   **Taxes and Assessments.**   Lessee shall be responsible for all real estate taxes, including special assessments, levied with respect to the property. Real Estate Taxes shall be payable in a lump sum within thirty (30) days of

receipt of notice to pay the same.   In the final year of tenancy, the taxes, which are paid in advance, shall be pro-rated between the Lessor and the Lessee on a monthly basis, as if paid in advance on a due date basis. Lessor shall maintain accurate books and records concerning all taxes and Lessee shall have the right to review those books and records to determine the method and accuracy of computing tax assessments during regular business hours.

15.   **Use.**   Lessee shall not cause nor permit any hazardous substance to be used, stored, generated or disposed of on or in the property whether by Lessee, Lessee's agents, employee, contractors or invitees; and Lessee agrees to indemnify and hold harmless the Lessor from all claims, damages, fines, judgments, penalties, costs, liabilities, or losses (including without limitation a decrease in value of the Premises, damages due to loss or restriction of rental or usable space, or any damages due to adverse impact on the marketing of the space, and all sums paid for settlement of claims, attorneys' fees, consulting and expert fees arising during and after the Lease Term and/or arising as a result of such contamination by Lessee.
Lessee shall maintain and use the Premises only in according with all federal, state, and local laws.

16.   **Assignment and Subletting.**   The Lessee may not assign, sublet, or otherwise transfer or convey its interest or any portion of its interest in the Premises without written consent from the Lessor.   Lessor's consent to assignment shall not be unreasonably withheld.   Assignment shall not release Lessee from the obligations under the Lease.

17.   **Trade Fixtures.**  All trade fixtures and movable equipment installed by the Lessee in connection with the business it conducts on the Premises shall remain the property of the Lessee and shall be removed when this lease expires.  The Lessee shall repair any damage caused by the removal of such fixtures.

18.   **The Lessee's Liability.**  All the Lessee's personal property, including trade fixtures, on the Premises shall be kept at the Lessee's sole risk, and the Lessor shall not be responsible for any loss of business or other loss or damage.

19.   **Damaged by Fire or Other Casualty.**  It is understood and agreed that if the Premises are damaged or destroyed in whole or in part by fire or other insured casualty during the Lease Term, the Lessor will repair and restore the same to good Lesseeable condition with reasonable dispatch.  The rent and other charges which are the obligation of the Lessee under this Lease will not abate for the period the Premises are unleaseable.  In this regard, Lessee shall obtain appropriate business interruption insurance to cover

such payments.  In no event shall the Lessor be required to repair or replace Lessee's merchandise.

20.   **Indemnification.**  The Lessee will indemnify and defend the Lessor against all claims for bodily injury or property damage relating to the Premises.  The claims covered by this Indemnification include all claims for bodily injury or property damage relating to (a) the condition of the Premises; (b) the use or misuse of the Premises by the Lessee or its agents, contractors or invitees; or (c) any event on the Premises, whatever the cause.  Lessee's indemnification does not extend to liability for damages resulting from the sole, gross negligence of Lessor or from the Lessor's intentional misconduct.

21.   **Limitation on Lessor's Liability.**  The Lessor, as defined in this Lease, included successors-in-interest.  The term is intended to refer to the owner of the Premises at the time in question.  If the Premises are sold, the new owner will automatically be substituted as the Lessor.

If the Lessor fails to perform this Lease and, as a result, the Lessee recovers a money judgment against the Lessor, the judgment will be satisfied out of the execution and sale of the Lessor's interest in the Premises, or by garnishment against the rents or other income from the Premises.  Lessor shall not be liable for any deficiency.  This section constitutes Lessee's sole and exclusive remedy for breach.

Conditioned solely on the sale of the Premises, Lessee agrees to the following release in favor of its then former Lessor.  Effective on the first anniversary of the date on which the Lessee is given notice of the sale, the Lessee releases its former Lessor from all claims, except those expressly preserved in this section.  This release is intended to be broadly construed for the benefit of the former Lessor and includes (a) all claims regarding the performance of this Lease; (b) and claims for bodily injury or property damage relating to the Premises; and (c) all claims in any other way relating to the Lease, the Premises, or the Lessor-Lessee relationship.  However, this release does not extend to any claim filed in a court of appropriate jurisdiction within one (1) year of the date of sale or to any claim for bodily injury  or property damages resulting from the former Lessor's gross negligence.

22.   **Mutual Releases.**   The Lessor and the Lessee, and all parties claiming under them, release each other from all claims and liabilities arising from or caused by any hazards covered by insurance on the leased Premises or covered by insurance in connection with property or activities on the Premises, regardless of the cause of the damage or loss. The Lessor and the Lessee shall each include appropriate clauses waiving subrogation against the other party, consistent with the mutual release in this provision, i their

insurance policies on the premises.

23. **Indemnification.**  If any part of the Premises is taken for any public or quasi-public purpose pursuant to any power of eminent domain, or by private sale in lieu of eminent domain, either the Lessor or the Lessee may terminate this Lease, effective the date the public authority takes possession. All damages for the condemnation of the Premises, or damages awarded because of the taking, shall be payable to the Lessor except any specific award for Lessee's loss of business.

24. **Default and Re-entry.** If the Lessee fails to pay rent when due; if the Lessee habitually breaches the economic terms of this Lease (meaning Lessee's failure to pay Base Rent or Additional Rent within seven (7) days of the due date on three (3) or more occasions during any twelve (12) month period); if the Lessee allows an uncured breach, including those regarding payment, to continue for a period of one (1) month following a demand for cure by the Lessor; or if the Lessee fails to perform any other obligations under this agreement within thirty (30) days after receiving written notice of the default from the Lessor; if the lessee makes any assignment for the benefit of creditors or a receiver is appointed for the Lessee or its property; or if any proceedings are instituted by or against the Lessee for bankruptcy or under any insolvency laws, the Lessor may terminate this Lease, reenter the Premises, and seek to re-let the Premises on whatever terms the Lessor thinks advisable.  Notwithstanding reentry by the Lessor, the Lessee shall continue to be liable to the Lessor rent owed under this Lease and for any rent deficiency that results from re-letting the Premises during the Lease Term.  Written notice of default shall not be required if the default involves the payment of Base Rent or Additional Rent.

In addition to the Lessor's other rights and remedies as stated in this Lease, and without waiving any of those rights, if th lessor deems necessary any repairs that the Lessee is required to make or if the Lessee defaults in the performance of any of its obligations under this Lease, the Lessor may make repairs or cure defaults and shall not be responsible to the Lessee for any loss or damage that is caused by that action.  The Lessee shall immediately pay to the Lessor, on demand, the Lessor's costs for curing any defaults, as additional rent under this Lease.

If the Lessor terminates this Lease, the Lessor is entitled to evict the Lessee and to recover all damages as a result of any breach.  It is within the contemplation of the parties that such damages may include (a) the difference between the contract rent and rent obtained rent for the remainder for the Lease  Term; (b) the estimated costs of restoring the Premises to their original condition; (c) any commissions paid to re-lease the Premises; and (d) reasonable attorney fees incurred by the lessor.  Lessor

6

may also evict Lessee without terminating this Lease. Lessee waives any right to possession of the Premises after eviction. Despite eviction, Lessee remains obligated for the payment of Base Rent and Additional Rent through the remainder of the lease Term. Nothing contained in this paragraph shall release the Lessor, however, the Lessor's duty to mitigate damages. Lessor and Lessee knowingly and voluntarily waive a trial by jury in any action to enforce this Lease or that is anyway related to the Lease, the Premises, or the relationship between Lessor and Lessee. **Lessor and Lessee are entering into this Lease as part of an overall transaction whereby the Lessor as Seller and the Lessee as Purchaser have sold and purchased, respectively, a certain Coney Island business carried on in the demised Premises. Accordingly, it is agreed between the parties to this Lease that a default in the payment terms of any executory provisions (including the terms of any promissory note) of the contract of sale of the Coney Island Restaurant business is a default in the Lease, and a default in this Lease is likewise a default in the terms of any executory provisions (including the terms of any promissory note) entered into by the parties with respect to the sale and purchase of the Coney Island Restaurant business. This Lease and the Sale and Purchase Agreement, including its Promissory Note, are therefore cross-collateralized.**

25.   **Subordination.**  This Lease and the Lessee's rights under it shall at all times be subordinate of the lien of any mortgage the Lessor now has or later places on the Premises or to any collateral assignment the Lessor makes of this Lease or of rent under this Lease; provided, however, that the mortgagee recognizes Lessee's prior rights under the Lease unless Lessee itself is then in default. At the request of any lienholder, the Lessee shall provide the Lessor with a customary Lessee's estoppel letter regarding the status of this Lease. If the Lessor defaults on the payment of its mortgage on the Premises, the Lessee may make the monthly payment owed under the mortgage note, and deduct that amount from the rent owed under this Lease.

26.   **Right of First Refusal.**   In the event that, during the Lease Term, including Option Periods, the Lessor obtains a bonafide Offer to Purchase the subject property, which Lessor desires to accept, the Lessee shall have the Right of First Refusal to purchase the Premises on the same terms and conditions as the bonafide Offer. Lessor shall notify Lessee of the receipt of the Offer, attaching to the Notice of Offer a copy of the Offer. Lessee shall have ten (10) days from the date that the Lessor placed the Notice of Offer in the U.S. Mail, properly addressed to Lessee's last known address, within which to accept the Offer.   Lessee's Acceptance shall be in writing, unconditional, and delivered to the lessor, within such 10-day period, at Lessor's address as specified above or at any subsequent address of which Lessor notifies Lessee. Lessee's Acceptance shall be accompanied by cash

7

or certified funds in the amount of the down-payment required by the Offer.

27. **Notices.** Any notices required under this Lease shall be in writing and served in person or sent by regular mail to the addresses of the parties stated in this Lease or to such other addresses as the parties substitute by written notice. Notices shall be effective on the date of the first attempted delivery.

28. **The Lessee's Possession and Enjoyment.** As long as the Lessee pays the rent as specified in this Lease and performs all its obligations under this Lease, the Lessee may peacefully and quietly hold and enjoy the Premises for the Lease Term.

29. **Late Fee.** All payments of rent received by the Lessor more than seven (7) days after the first of the month shall be subject to a late penalty fee of five (5%) percent of the installment then due. Thereafter, all rent past due shall accrue interest at the rate of seven (7%) percent, simple annual, until paid in full. Payment of real estate taxes, insurance, utilities and other charges allowed under this Lease shall be treated the same as payment of rent, but such payment shall be due to the Lessor, and late fees shall not be incurred until, thirty (30) days after being billed to the Lessee.

30. **Holding Over.** If the Lessee does not vacate the Premises at the end of the Lease Term, the holding over shall constitute a month-to-month tenancy. Rent for the holdover period shall increase to 125% of the rent prior to holdover.

31. **Entire Agreement.** This Agreement, together with the Security and Option Agreement and Rider attached hereto (Restaurant Use Rules), and the Sale and Purchase documents dated even herewith and incorporated by reference, entered into between the Lessor and the Lessee, contain the entire agreement of the parties with respect to its subject matter. This Agreement may not be modified except by a written document signed by the parties.

32. **Waiver.** The failure of the Lessor to enforce any condition of this Lease shall not be a waiver of its right to enforce any condition of this Lease. No provisions of this Lease shall be deemed to have been waived unless the waiver is in writing.

33. **Binding Effect.** This agreement shall bind and benefit the parties and their successors and permitted assigns.

34. **Time is the Essence.** Time is the essence in the performance of this Lease.

8

35. **Effective Date.**   This Lease shall be effective June 1ˢᵗ, 2012

36. **Alteration.**   The parties agree that no alterations, additions or improvements to the Premises with be made without the prior written consent of the Lessor.

37. **Liens.**  The Lessee will keep the Premises free of all liens of any sort, and will hold the Lessor harmless from any liens which may be placed on the Premises, except those which are attributable to acts of the Lessor.  This Lease and the attachments thereto set forth all of the covenants, agreements, stipulations, promises, conditions and understandings between the Lessor and Lessee concerning the Premises and there are not other such, whether oral or written, between them other than is set forth herein.

38. **Governing Law.**   The Laws of the State of Michigan will control in the construction and enforcement of this Lease and any dispute resolution will take place in Wayne County, Michigan.

39. **Remedies.**   In the event that a breach of this Lease by either party results in an award of damages, the prevailing party shall be entitled to costs and actual attorney fees.

40. **Option to Renew.**    Lessee shall have three(3) consecutive five (5) year options to renew this Lease, each separately exercised, upon all of the terms and conditions of the original Lease, rent excepted.  Rent for each option term shall be determined by agreement of the parties; provided, however, that rent shall not exceed the product obtained by multiplying the rent paid for the expiring term by a fraction, the numerator of which is the CPI-U[1] for the last month of the expiring term and the denominator of which is the CPI-U for the first month of the expiring term.  The purpose of the multiplier is to increase (but not decrease) rent for the Option Terms by the percentage increase in the CPI-U experienced since the first month of the previous term.

---

[1]

The consumer price index to be used in this formula is the Consumer Price Index for All Urban Consumers, All Items, All Cities, issued by the U.S. Department of Labor, Bureau of Labor Statistics (1982-1984-100).  If the consumer price index is converted to a different standard reference base or otherwise revised, the formula for rent escalation shall take into account the conversion factor published by the U.S. Department of Labor, Bureau of Labor Statistics; Prentice-Hall, Inc.; or another nationally recognized publisher of similar statistical information, in that order. If the consumer price index ceases to be published, the Landlord and the Tenant shall agree on another index to use in the formula.

9

IN WITNESS WHEREOF, we have hereunto set our hands this ___18___ day of _March_, 2012

_Vladimir Gjoca_

_____
Witness

_____
Witness

LESSOR:

_Djela Shkreli_
DJELA SHKRELI

_Lesh Shkreli_
LESH SHKRELI

LESSEE:

_Mukadez Kadiu_
MUKADEZ KADIU

_____

10

<u>**RIDER TO LEASE BETWEEN DJELA SHKRELI and LESH SHKRELI, AS LESSORS, AND** MUKADEZ KADIU **, AS LESSEE,**</u>
<u>**DATED**</u> 2012

## <u>RESTAURANT USE RULES</u>

1. If any license or permit is required for the proper and lawful conduct of the Designated Use or if a failure to procure such a license or permit might, in any way, affect Lessor or the Property, Lessee, at Lessee's expense, must duly procure and maintain the license or permit. Lessee, at Lessee's expense, must at all times comply with the requirements of each license and permit.

2. Lessee must conduct its business in a high class and reputable manner. Lessee must keep the Premises well lighted during all hours of operation for the Restaurant.

3. Lessee must promptly comply with all laws, ordinances, lawful orders, and regulations affecting the Premises and the cleanliness, safety, occupancy, and use of the Premises.

4. No auction, liquidation, going out of business, fire, or bankruptcy sales will be conducted on the Premises.

5. On written notice from Lessor, Lessee must immediately cease displaying merchandise or advertising that Lessor finds objectionable.

6. Lessee must keep the Premises and their windows and signs orderly, neat, safe, clean, and free from rubbish and dirt at all times and must store all trash and garbage within the Premises. Lessee will not burn any trash or garbage at any time in or about the Premises.

7. No merchandise or other obstruction will be placed or permitted on the walks adjoining the Premises.

8. Lessee will store and stock on the Premises only goods, wares, and merchandise that Lessee intends to offer for sale on the Premises.

9. Lessee must:

   a. maintain, service, and repair the ventilating and exhaust system serving the Premises and make all replacements to it during the

1

Term, including the installation of charcoal filters and, in furtherance and not in limitation of the above, maintain the ventilating exhaust system and any ducts connecting to it, to Lessor's satisfaction and in a manner that does not to interfere with the ventilating system of the Premises;

b.      keep the drain, waste, and sewer pipes and connections with water mains servicing the Premises free from obstruction and maintain, on a monthly basis, grease traps and filters in the main soil line of the Premises;

c.      operate Lessee's business from the Premises in a clean and sanitary manner to prevent infestation by vermin, roaches, or rodents and have contractors designated or approved by Lessor throughly exterminate against infestation by vermin and roaches all portions of the Premises used for the storage, preparation, service, or consumption of food or beverages on a weekly basis and whenever there is evidence of any infestation, by and in accordance with the Rules; and

d.      store all refuse and rubbish on the Premises in sealed metal or water-tight rubber or plastic containers and removed from the Premises each day that the Premises are open for business.

10.   Lessee must not permit the use of the Premises for (a) the sale or use of alcoholic beverages; (b) entertainment of any nature; (c) dancing; or (d) coin-operated games.

11.   Lessee will not use or permit any person to use the Premises in any manner that violates or would create liability under federal, state, or local laws, ordinances, rules, regulations, or policies.  Lessee will not (either with or without negligence) cause or permit the escape, disposal, or release of any biologically or chemically active or other hazardous substances or materials, Lessee must not allow the storage or use of such substances or materials in any manner not sanctioned by law or by the highest standards prevailing in the industry for the storage and use of such substances or materials or allow to be brought into the Premises any such materials or substances except to use in the ordinary course of Lessee's business, and then only after written notice is given to Lessor of the identity of the substances or materials. Without limitation, hazardous substances and materials include those described in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 USC 9601 et seq.; the Resource

2

Conservation and Recovery Act of 1990, 42 USC 6901 et seq.; any applicable state or local law; and the regulations adopted under these acts. In addition, Lessee must execute affidavits, representations, and the like from time to time at Lessor's request concerning Lessee's best knowledge and belief regarding the presence of hazardous substances or materials on the Premises. In all events, Lessee will indemnify Lessor in the manner elsewhere provided in this Lease against any liability resulting from any release of hazardous substances or materials in the Premises while Lessee is in possession or caused by Lessee or persons acting under Lessee.

12. Lessee will not do or permit to be done any act that will invalidate or be in conflict with any insurance policy carried by or for the benefit of Lessor with respect to the Premises or that might subject Lessor to any liability; nor may Lessee keep anything on the Premises, except as permitted by the fire department, board of fire underwriters, or other authority having jurisdiction, and then only in a manner that does not increase the insurance rate for the Premises, or use the Premises in a manner that will increase the insurance rate for the Premises.

IN WITNESS WHEREOF, we have hereunto set our hands this _18th_ day of _March_ 2012.

| | |
|---|---|
| _Vladimir Gjoca_ | **LESSOR:** _Djela Shkreli_ |
| Witness | DJELA SHKRELI |
| | _Lesh Shkreli_ |
| Witness | LESH SHKRELI |
| | **LESSEE:** |
| | _Mukadez Kadiu_ |
| | MUKADEZ KADIU |
| | |

3

SCHEDULE 1.1 (A)
SCHEDULE OF ASSETS

- 22 Chairs
- 6 Corner Stools
- 7 Shelves
- 11 Booths
- 6 Tables
- 1 Television
- 2-Two door stand up refrigerator
- 1 Heater Lamp
- Preparation table (stainless steel)
- 1 Steam table
- 1- 8 Ft. Pizza refrigerator
- 6 Burner Ovens
- 1 Charcoal boilers (24 inches)
- 1- 4 Ft. Grill kitchen
- 1 -2 Ft. Grill Kitchen
- 2 Deep fryers
- 2 Door freezer
- Ice machine
- Work-in counter
- Dish Washer
- 20 Ft. Hood
- Hand sink kitchen
- Fire equipment
- 9 lights